## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 27 2020, 6:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Christopher Sturgeon<br>Clark County Public Defender's Office<br>Jeffersonville, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Thomas J. Flynn<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re: The Termination of the Parent-Child Relationship of B.M. (Minor Child);<br><br>B.Z. (Mother),<br>*Appellant-Defendant,*<br><br>v.<br><br>The Indiana Department of Child Services,<br>*Appellee-Plaintiff.* | February 27, 2020<br><br>Court of Appeals Case No. 19A-JT-1730<br><br>Appeal from the Clark Circuit Court<br><br>The Honorable Joni Grayson, Magistrate<br><br>The Honorable Vicki L. Carmichael, Judge<br><br>Trial Court Cause No. 10C04-1901-JT-1 |

**Pyle, Judge.**

## Statement of the Case

[1] B.Z. ("Mother") appeals the termination of the parent-child relationship with her daughter ("B.M."), claiming that there is insufficient evidence to support the termination because the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that the conditions that resulted in B.M.'s removal will not be remedied and that a continuation of the parent-child relationship poses a threat to B.M.'s well-being. Concluding that there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm the trial court's judgment.[1]

[2] We affirm.

## Issue

Whether there is sufficient evidence to support the termination of the parent-child relationship.

## Facts

[3] Mother is the parent of B.M., who was born in November 2005. In 2007, Mother was arrested for manufacturing methamphetamine, and B.M., who smelled like ammonia, was placed with Father. In 2010, DCS substantiated a claim against Father for the physical abuse of B.M., and B.M. was placed in foster care. B.M. was adjudicated to be a Child in Need of Services ("CHINS")

---

[1] Father is not a party to this appeal.

in January 2011.  The case was closed in May 2013 when B.M. was reunified with Mother.

[4]     In June 2017, then eleven-year-old B.M. disclosed that Mother's husband ("Stepfather") had been sexually abusing her for two years.  When Mother, who did not believe B.M., took no action to protect her daughter, DCS removed B.M. from Mother's home and placed her in foster care.  In September 2017, Mother was charged with theft.  In November 2017, Mother was charged with four counts of dealing methamphetamine, four counts of possession of methamphetamine, and four counts of maintaining a common nuisance.

[5]     B.M. was adjudicated to be a CHINS in December 2017.  In the January 2018 CHINS dispositional order, the trial court ordered Mother to:  (1) complete a parenting assessment and successfully complete all recommendations; (2) complete a substance abuse assessment and successfully complete all recommendations; (3) complete a psychological evaluation and successfully complete all recommendations; (4) attend scheduled visitations with B.M.; (5) provide B.M. with a safe, secure, and nurturing environment that is free from abuse; (6) obey the law; (7) abstain from the use of illegal controlled substances; (8) maintain suitable, safe, and stable housing; and (9) secure and maintain a legal and stable source of income.

[6]     Because Mother continued to use drugs and only partially complied with the terms of the dispositional order, DCS filed a petition to terminate her parental rights in November 2018.  Testimony at the May 2019 termination hearing

revealed that between February 2018 and May 2019, Mother had tested positive for methamphetamine in twelve of fourteen drug screens. Psychologist David Winsch, ("Dr. Winsch"), who assessed Mother in April 2018, testified that Mother had been treated for mental health issues since she was eight years old. Dr. Winsch further testified that Mother suffered from bipolar disorder, ADHD, and substance abuse issues. According to Dr. Winsch, Mother "was not safe to care for [B.M.] if she [was] abusing substances." (Tr. Vol 2 at 17-18). Dr. Winsch's prognosis for Mother was "guarded." (Tr. Vol. 2 at 18). He opined that it was "less likely that [Mother] would be able to make a change to be able to provide [a] stable and safe home." (Tr. Vol. 2 at 18). He recommended that Mother attend individual therapy, a substance abuse program, and parenting classes. Mother did not successfully complete any of these programs.

[7] The testimony further revealed that in February 2018, Mother was charged with criminal mischief, battery, and battery resulting in bodily injury. All of Mother's legal charges, including those filed before the termination petition had been filed, were pending at the time of the termination hearing. Mother and B.M. attended two family therapy sessions in August and September 2018. During the second session, when B.M. attempted to discuss the sexual abuse, Mother defended Stepfather. Shortly thereafter, Mother appears to have been incarcerated for a probation violation in November 2019 after she admitted to her probation officer that she would test positive for an illegal substance. She has not participated in any services since her January 2019 release from jail.

[8] Further, when Stepfather was released from jail in early 2019, Mother allowed him to return to her home. When B.M. learned that Stepfather had returned to Mother's home, B.M. told her therapist that she no longer wanted to see Mother because she did not trust Mother to keep her safe. B.M.'s last visit with Mother was in October 2018 before Mother was incarcerated.

[9] Also at the hearing, when asked about her status with Stepfather, Mother responded that she was married to him and that he lived at her house. She further testified that she did not want to call B.M. a liar, but she had seen no evidence that Stepfather had sexually abused B.M. She further testified that B.M. had the "propensity to exaggerate." (Tr. Vol. 2 at 102). Mother also admitted that she "had to stay off drugs." (Tr. Vol. 2 at 104).

[10] Lastly, CASA Wendy Shepard ("CASA Shepard") testified that when B.M. learned that Stepfather had been released from jail in early 2019, B.M. "expressed great fear" that Stepfather would find her. (Tr. Vol. 2 at 129). The trial court suspended visitation between Mother and B.M. in April 2019. In addition, according to CASA Shepard, B.M. "was crushed because [Mother] took [Stepfather] back in[.] She really believed that [Mother] had believed her." (Tr. Vol. 2 at 129). CASA Shepard further testified that B.M. wanted only a family to trust and protect her. According to the CASA, B.M. deserved that. CASA Shepard recommended that Mother's parental rights be terminated and that B.M. be placed for adoption.

[11] Following the hearing, the trial court issued a termination order, which concluded that DCS had met its burden of proving that there was a reasonable probability that the conditions that resulted in B.M.'s removal would not be remedied. Specifically, the trial court stated that "[b]ased upon [Mother's] longstanding pattern of abusive and neglectful behavior and lack of progress in the current CHINS case, it is unlikely that the reasons for [B.M.'s] removal will be remedied." (Termination Order at 6). Mother now appeals the termination.

## Decision

[12] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[13] When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *K.T.K.*, 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id*. Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining

whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1231.

Here, Mother argues that there is insufficient evidence to support the termination of her parental rights. Specifically, she contends that the evidence is insufficient to show both that there is a reasonable probability that the conditions that resulted in B.M.'s removal or the reasons for placement outside

the parent's home will not be remedied and a continuation of the parent-child relationship poses a threat to B.M.'s well-being.

[16] However, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.3d 212, 220 (Ind. Ct. App. 2010). We therefore discuss only whether there is a reasonable probability that the conditions that resulted in B.M.'s removal or the reasons for her placement outside Mother's home will not be remedied.

[17] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 642-43 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* at 643. The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* DCS need not rule out all possibilities of change. *In re Kay. L.,* 867 N.E.2d 236, 242 (Ind. Ct. App. 2007). Rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not change. *Id.*

[18]     Here, our review of the evidence reveals that B.M. was removed from Mother after B.M. disclosed that Stepfather had been sexually abusing her for two years, and Mother took no action to protect her daughter. At the time of the termination hearing, Mother, who still did not believe her daughter, had allowed Stepfather to move back into her house following his release from incarceration. In addition, Mother had not successfully completed any of the court-ordered programs. She had also continued to use methamphetamine during the pendency of the CHINS proceeding and had violated her probation. In addition, at the time of the termination hearing, Mother had not seen B.M. for seven months. This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in B.M.'s removal would not be remedied. There is sufficient evidence to support the termination of Mother's parental rights.

[19]     Affirmed.

May, J., and Crone, J., concur.